**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**CYNTHIA FISHER; ESTHER PAYTON,**                                    **PLAINTIFFS**
*also known as Faye*; **EDWARD WILLIAMS;
MACEDONIA MISSIONARY BAPTIST
CHURCH; ROBERT ZELLNER,** *and*
**FRANCELIA CLAIBORNE**

**v.**                                    **CIVIL ACTION NO. 1:23-cv-265-TBM-RPM**

**CITY OF OCEAN SPRINGS, MISSISSIPPI**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The City of Ocean Springs, just like any other city, is interested in obtaining as much state and federal grant money as it can. According to the City, having an urban renewal plan is a way to unlock grant money. But an urban renewal plan requires certain areas of a city to be labeled as slum or blighted.

The Plaintiffs are residents of Ocean Springs. And their properties were included in the 320 acres that the City designated as slum or blighted. For the Plaintiffs, this is particularly concerning because slum and blighted designations never expire, so at some point down the road, the City could go to court and attempt to eminent domain any property in an urban renewal area. While the City still has numerous hurdles to overcome before it could ever take the Plaintiffs' properties for private development—including proving public use at an eminent domain trial—the Plaintiffs have now filed suit on procedural due process grounds. The Plaintiffs' primary complaint is that they should have received an individualized mailing of the City's intent to designate the area as slum or blighted, and also an individualized hearing before their properties received such designations. Having received neither, the Plaintiffs demand the City pay attorney fees, $1.00 in

damages, and for this Court to declare as unconstitutional all Mississippi laws that do not require individual notice prior to slum or blighted designations.

Unfortunately for the Plaintiffs though, the law does not require individualized notice for these type of "legislative" decisions made by a city in Mississippi. Instead, the Plaintiffs' recourse is both through direct complaints to their elected City officials, and for the Plaintiffs to respond through democratic means by voting for officials in City elections. It is not through a lawsuit. This is somewhat evident by how the Plaintiffs' complaints to their elected leaders have resulted in their properties being removed from the urban renewal area. In a way, the Plaintiffs have already won. This case is dismissed.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs assert that in 2023 the City of Ocean Springs singled out areas in their neighborhood to be designated as slum or blighted to receive state and federal grant money, for which the City otherwise would not have qualified. [21], p. 20. The City initially began discussing potential urban renewal areas on June 21, 2022, and presented a proposed Urban Renewal Area Map on July 5, 2022. [20], pps. 3-4. The Map was adopted on September 20, 2022, and clearly identified that the Plaintiffs' neighborhood was within the Urban Renewal Area. [20], pps. 3-4. Following the public display of the Urban Renewal Area Map at City Hall from July 5, 2022, through April 4, 2023, and the City's social media posts pertaining to the Urban Renewal Area Map, the City of Ocean Springs adopted "A Resolution Designating Slum and Blighted Areas for Rehabilitation, Conservation, and Redevelopment." [17], p. 10; [20], p. 4; [43], p. 10. The April 4th Resolution designated six areas, which included 131 individual parcels of land, spanning over 320 acres, as slum and blighted. [17], p. 11.

The Plaintiffs, however, were not present at the meeting adopting the April 4th Resolution. Although the Urban Renewal Area Map was publicly displayed at City Hall for 273 days—and illustrated that the Plaintiffs' neighborhood was within the Urban Renewal Area—the Plaintiffs nevertheless argue that they did not know their properties, or those next door, were included in this Resolution. Also, Plaintiff Cynthia Fisher's property was not included in the Resolution, but her immediate neighbor's property was included. Her neighbor, however, is not a named party in this matter. [17], p. 20. Apart from the City's objection to the Plaintiffs' standing in general, the City makes no separate argument as to Fisher's standing.[1]

Following the April 4th Resolution, the City presented a Proposed Urban Renewal Plan for these six areas on August 21, 2023. [21], p. 12. A public hearing to discuss the Proposed Urban Renewal Plan was held on September 5, 2023. [17], p. 15. By this time, opposition to the Urban Renewal Plan was materializing. At this hearing, many opponents of the Plan voiced their concerns and requested that the hearing on the potential adoption of the Plan be rescheduled for a later date at the Civic Center to accommodate more people. [19], p. 4. The hearing was rescheduled for October 2, 2023, and the City published notice of the hearing in a local newspaper. [17], p. 15.

At the October 2nd hearing, the Proposed Urban Renewal Plan was discussed, and it is undisputed that the City offered citizens within the Urban Development Area—as designated in the April 4th Resolution—the ability to remove their property from this proposed plan by completing an "opt-out" form. [21], p. 12. Each of the Plaintiffs submitted an opt-out form such

---

[1] Courts have found neighboring property owners have alleged sufficiently concrete and particularized injuries where they have specified how the city's zoning decision would impact their own property interests. *Lujan*, 504 U.S. at 572 n.7 ("[U]nder our case law, one living adjacent to the site for proposed construction . . . has standing to challenge the licensing agency's failure to prepare an environmental impact statement.").

that the Plaintiffs' properties would not be included in any future urban renewal plan by the City. *Id.*; [19], p. 5; [25], p. 9.

While the City's Urban Renewal Plan and opt-out procedures were pending, the Plaintiffs went ahead and filed suit in this Court on October 12, 2023, seeking declaratory and injunctive relief as well as nominal damages resulting from the City's alleged violation of their procedural due process rights under the Fourteenth Amendment. The Plaintiffs specifically argue that they were denied adequate notice and an opportunity to be heard before the adoption of the April 4th Resolution which designated their properties, or neighboring properties, as slum or blighted. [21], p. 13. Notably, on November 21, 2023, the City rescinded the April 4th Resolution. [19], p. 5; [21], p. 13.

The Plaintiffs later filed their First Amended Complaint [17] challenging the City's April 4th Resolution which designated their properties, or neighboring properties, as slum or blighted. Because they received constructive notice of the slum or blighted designations through the posting at City Hall, rather than individual notice in the mail of the slum or blighted designations, the Plaintiffs claim that the City adopted the April 4th Resolution in violation of the Due Process Clause. As a result, the Plaintiffs specifically seek a declaration that Mississippi Code Section 11-51-75, which requires an appeal from a land use decision made by the City to be filed within ten days, and Mississippi Code Section 43-35-13, Mississippi's urban renewal law, are unconstitutional because they allegedly violate the Due Process Clause of the Fourteenth Amendment. Similarly, the Plaintiffs also seek a declaration that the City's April 4th Resolution violated the Plaintiffs' right to due process, and that any future urban renewal resolution passed without individualized notice would be similarly unconstitutional. Further, the Plaintiffs request a permanent injunction

4

"preventing the City from approving or executing any urban renewal plan predicated on an invalid urban-renewal-area resolution, or from creating any future urban renewal area without providing affected property owners [individualized mailed] notice." [17], p. 45. Finally, the Plaintiffs request nominal damages.

Subsequently, the City filed its second Motion to Dismiss under Rule 12(b)(1) asserting that the Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because the Plaintiffs lack standing and because their claims are moot and unripe. [18]; [19], p. 15. In the alternative, the City also argues that the Plaintiffs have failed to state a procedural due process violation under Rule 12(b)(6). [19], p. 15. This matter is now fully briefed. The Court will first provide a brief discussion of Urban Renewal Laws in Mississippi and will then turn to the jurisdictional arguments before finally reaching the merits of the Plaintiffs' procedural due process claims.

## II. MISSISSIPPI'S URBAN RENEWAL LAWS

Article 3 § 17 of the Mississippi Constitution provides that "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof." MISS. CONST. ART. 3, § 17. Under Mississippi law, a city may exercise its power of eminent domain "in connection with an urban renewal project." MISS. CODE ANN. § 43-35-17(a). To complete urban renewal projects under Mississippi law, cities must comply with the process set forth in Mississippi Code § 43-35-13. In accordance with this statute, a city must first designate a slum or blighted area or "a combination thereof." MISS. CODE ANN. § 43-35-13(a). Unlike other states, however, Mississippi does not have a specific statutory scheme for challenging a slum or blight designation. Instead, a property owner must challenge such designations under

Mississippi Code § 11-51-75, which is the same way all other "decisions" by a city must be challenged. Although a property owner has ten days to appeal the designation under Mississippi Code § 11-51-75, the statute does not require individual mailed notice of the area designation.[2] And under current Mississippi law, if a property owner misses the ten-day window to appeal, they are barred from challenging the slum or blighted designations in the future. *Wiggins v. City of Clinton Miss.*, 298 So. 3d. 962 (Miss. 2020).

Once the slum or blighted area designation is adopted, the city may adopt an urban renewal plan, detailing the urban renewal projects the city seeks to complete. MISS. CODE ANN. § 43-35-13(b). Next, the city "shall hold a public hearing on an urban renewal project, after public notice thereof by publication in a newspaper having general circulation in the area of operation of the municipality." MISS. CODE ANN. § 43-35-13(c). The notice "shall describe the time, date, place and purpose of the hearing, shall generally identify the urban renewal area covered by the plan, and shall outline the general scope of the urban renewal project under consideration." *Id*. Following the hearing, a city may approve the urban renewal project if it meets the statutory requirements detailed in Mississippi Code § 43-35-13(d).

After an urban renewal project is approved, a city may then petition for a public taking of the slum or blighted properties by initiating an eminent domain proceeding. MISS. CODE ANN. §

---

[2] Mississippi Code Section 11-51-75 provides:

Any person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located. A written notice of appeal to the circuit court must be filed with the circuit clerk within ten (10) days from the date at which session of the board of supervisors or the governing authority of the municipality rendered the judgment or decision.

MISS. CODE ANN. § 11-51-75.

11-27-5. During the eminent domain proceeding, the property owner may move to dismiss the eminent domain action for three reasons: (1) plaintiff is not a legal entity entitled to the right of eminent domain; (2) there is no public necessity for the taking of the particular property; and (3) the contemplated use for the property is not a public use. MISS. CODE ANN. § 11-27-15. It is the city's burden to prove that it has "satisfied the laws of our state." *Wiggins*, 298 So. 3d at 965. If the city meets its burden and the motion to dismiss is denied, the court of eminent domain will proceed with a trial. MISS. CODE ANN. § 11-27-15. If the jury returns a verdict for the city, ownership of the property will be transferred to the city. MISS. CODE ANN. § 11-27-27.

Following a city's exercise of its power of eminent domain and acquisition of the property under Mississippi's Urban Renewal Laws, a city may eventually transfer the property to a private developer. According to Article 3 § 17 of the Mississippi Constitution, however, "[n]o property acquired by the exercise of the power of eminent domain under the laws of the State of Mississippi, shall, for a period of ten years after its acquisition, be transferred" to a private developer. MISS. CONST. ART. 3, § 17A. The ten-year provision does not apply, however, where the use of eminent domain: (1) removes a public nuisance, (2) removes a structure that is beyond repair or unfit for human habitation or use, (3) is used to acquire abandoned property, or (4) eliminates a direct threat to public health or safety caused by the property in its current condition. MISS. CONST. ART. 3, § 17A. So where the exceptions apply, a city may promptly transfer the property to a private developer.

### III. STANDARD OF REVIEW

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001). "In evaluating subject matter jurisdiction on a motion to dismiss a court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). The burden of proof on a Rule 12(b)(1) motion lies with the party asserting jurisdiction. *Ramming*, 281 F.3d at 161. A court should grant a Rule 12(b)(1) motion to dismiss only when it appears certain that the plaintiff cannot prove any set of facts that would entitle them to recovery. *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 188 (5th. Cir. 2023). When both grounds for dismissal apply under Rule 12(b)(1) and 12(b)(6), courts should dismiss only on the jurisdictional grounds under Rule 12(b)(1) without considering whether the plaintiff failed to state a claim under 12(b)(6). *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

A review of whether a complaint fails to state a claim under Rule 12(b)(6) involves a different set of considerations than a Rule 12(b)(1) motion. "The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

Courts need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). But "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 832 (5th Cir. 2020). "The issue is not whether the plaintiff[s] will ultimately prevail, but whether [they are] entitled to offer evidence to support [their] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted).

## IV. SUBJECT MATTER JURISDICTION

In their Amended Complaint, the Plaintiffs not only challenge the City's April 4th Resolution which designated the properties as slum or blighted, but also the process of making and challenging these resolutions. The Plaintiffs assert that their "sole cause of action is that the Mississippi statutes governing redevelopment area designations and the process for appealing those designations violate due process both on their face and as applied." [21], p. 18. As a result of these alleged procedural due process violations, the Plaintiffs seek declaratory relief that Mississippi Code Section 11-51-75 and Mississippi Code Section 43-35-13 are unconstitutional, and that the City's resolutions—including the April 4th Resolution—passed under these statutes are also unconstitutional. The Plaintiffs also request injunctive relief to enjoin the City from

proceeding under these statutes in the future, and they further demand nominal damages in the amount of $1.00.

The City argues that the Plaintiffs' procedural due process claims must be dismissed for lack of subject matter jurisdiction for three reasons: (1) the Plaintiffs lack standing to assert their claims because they did not allege a concrete and particularized injury; (2) the Plaintiffs' claims arising from the April 4th Resolution are moot because that Resolution has been rescinded; and (3) the Plaintiffs' claims based on any future resolution are unripe. In Response, the Plaintiffs argue that "the City cannot render this case moot by voluntarily ceasing its challenged conduct to avoid litigation." [21], p. 15. The Plaintiffs also assert that their claims are ripe for review because when the suit was filed, their properties, or neighboring properties, were under a blight designation, which they did not have the opportunity to challenge. [21], p. 26. And despite the rescission of the April 4th Resolution, the Plaintiffs allege that their claim for nominal damages remains justiciable because they suffered a complete constitutional deprivation when the City passed the April 4th Resolution without providing Plaintiffs personal notice, an explanation on how to challenge the resolution, and a meaningful opportunity to be heard. [21], pps. 15-16.

For the reasons discussed below, the Plaintiffs have alleged an injury in fact sufficient to confer Article III standing. Second, while the Plaintiffs' request that this Court enter a declaratory judgment as to the April 4th Resolution is moot, the "voluntary cessation doctrine" saves the Plaintiffs' remaining requests for declaratory and injunctive relief from a finding of mootness. Finally, because a procedural due process claim is complete at the time that process is denied, this matter is ripe for review.

## A. Article III case or controversy requirement

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Crane v. Johnson*, 738 F.3d 244, 251 (5th Cir. 2015) (citing U.S. Const. art. III, § 2). The judicial doctrines of standing, ripeness, and mootness have evolved from this constitutional restriction. *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). "In order to have standing to assert federal jurisdiction, a plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)).

"Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 339 (5th Cir. 2018) (citations and internal quotations omitted). Finally, "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)). The Court will address each in turn.

## B. Standing

The City argues that the Plaintiffs lack standing to assert their procedural due process claims because the Plaintiffs did not "undergo a specific . . . harm . . . that was not suffered by the general public." *Id.* In support of their argument, the City claims that the "designation of [a] blighted area is a legislative act" and that "[n]o specific right to contest the blighted area is set

forth in the URL ['Urban Renewal Laws'], and no such separate property right of review exists." [19], p. 12. While the City's argument appears to attack the merits of the Plaintiffs' claims, rather than the Plaintiffs' standing to assert such claims, out of an abundance of caution the Court finds the Plaintiffs have alleged an injury in fact sufficient to confer Article III standing. [19], p. 12.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Thus, if a plaintiff has not suffered an injury caused by the defendant that the court can remedy, "there is no case or controversy for a federal court to resolve." *TransUnion LLC v. Ramirez*, --- U.S. ----, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (quotation omitted). Because the City only addresses the injury in fact prong here, the Court finds that the City concedes prongs two and three.[3]

"An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560-61). The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343

---

[3] For completeness of the record, however, the Court finds that the Plaintiffs satisfy the remaining standing requirements. Indeed, the injuries are "fairly traceable" to the City, as the alleged deprivation of due process "is the consequence of [the City's] actions." *Warth*, 422 U.S. at 505. The relief requested will also redress said injuries. *Massachusetts v. E.P.A.*, 549 U.S. 497, 127 S. Ct. 1438, 1453, 167 L. Ed. 2d 248 (2007) ("When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021) ("a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.").

(1975)). In procedural due process cases, courts are especially cautious with the injury-in-fact analysis because it often overlaps with "the merits of whether a protected property interest exists." *Brooks v. Butler Cnty., Ohio*, No. 21-4129, 2022 WL 2526601, at *3 (6th Cir. Jul. 7, 2022) (citing *Bell v. Hood*, 327 U.S. 678, 682-83, 685, 66 S. Ct. 773, 90 L. Ed. 939 (1946)); *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 943 (10th Cir. 2003). But "standing in no way depends on the merits of the plaintiff's" claims. *Warth*, 422 U.S. at 500 (citing *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968)); *Carey*, 435 U.S. at 266. Even though a plaintiff's claim may ultimately fail on the merits, this does not mean that a plaintiff is deprived of standing to assert it. *See Trump v. Hawaii*, --- U.S. ----, 138 S. Ct. 2392, 2416, 201 L. Ed. 2d 775 (2018). Thus, the question before the Court is not necessarily whether the Plaintiffs have alleged a protected property interest, but "whether the plaintiff[s'] alleged injury is 'concrete,' 'particularized,' and 'actual or imminent.'" *Pierre v. Vasquez*, 2022 WL 68970, at *2 (5th Cir. 2022).

### i. Concrete and particularized

For an injury to be "concrete," it "must actually exist." *Spokeo*, 578 U.S. at 340. And an injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). Here, the Plaintiffs assert that the properties were designated as slum or blighted by the City pursuant to Mississippi Code Section 43-35-3. The Plaintiffs argue that this designation never expires, and is "required before a city can exercise any other statutory urban renewal powers—including eminent domain." [21], p. 6. Therefore, the Plaintiffs argue that they "have a constitutionally protected property interest in Mississippi's statutory cause of action to challenge urban-renewal-area designations affecting their property." [17], p. 29. As well as "a constitutionally protected property interest in challenging a blight or slum

designation that purports to establish the constitutional predicate for public use allowing an exercise of eminent domain." [17], p. 39. And "a constitutionally protected property interest in challenging a blight or slum designation allowing acquisition and transfer of their land to a private developer, which otherwise would be barred by Article 3, Section 17A of the Mississippi Constitution." [17], p. 39. The question the Court must answer at this stage, however, is not actually whether the Plaintiffs have alleged a protected property interest, but whether the Plaintiffs' injuries are concrete and particularized. The Court finds that they are.

The Plaintiffs assert that their injury is the loss of the *state* statutory right to appeal under Mississippi Code Section 11-51-75 allowing them to challenge the slum and blight designations. The Plaintiffs also seek nominal damages for violations to their procedural due process rights. Through these allegations, the Plaintiffs have identified injuries to their own properties and neighborhood as well as their own individual procedural due process rights. For all of the above reasons, the Court finds that the injuries alleged are concrete and particularized to the Plaintiffs for purposes of Article III standing. *See Lujan*, 504 U.S. at 566 (explaining that standing to sue may not be based on "generalized interest of all citizens in a constitutional governance"); *Coates v. Hall*, 512 F. Supp. 2d 770 (W.D. Tex. 2007) (finding that because "[t]he Supreme Court has held that a denial of procedural due process is actionable for nominal damages without proof of actual injury," the plaintiffs alleged "non-economic damages sufficient to confer standing").

### ii. Actual or imminent

Having found that the injuries alleged are concrete and particularized to the Plaintiffs, the Court must now determine whether the injuries alleged were "actual or imminent, not conjectural or hypothetical." *Deutsch*, 882 F.3d at 173. Standing is determined when suit is filed. *Texas v. Equal*

*Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019). When suit was filed, the Plaintiffs' properties or neighboring properties had been officially designated as slum or blighted. And it is undisputed that at the time this suit was filed, the April 4th Resolution had not been rescinded, the Plaintiffs' opt-out requests were pending, and the urban renewal maps had not been redrawn. *Lujan*, 504 U.S. at 570 n.5. It is enough that, at the time suit was filed, the injuries alleged would impact the Plaintiffs' property. *See Delaware Riverkeeper Network v. FERC*, 243 F. Supp. 3d 141, 150 (D.D.C. 2017) (finding plaintiffs had standing to assert procedural due process claim as their injuries were imminent due to the high likelihood of approval of the complained-of pipeline project). For these reasons, the Court finds that the Plaintiffs have alleged a constitutionally cognizable injury in-fact for purposes of Article III standing. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("the injury alleged as an Article III injury-in-fact need not be substantial; 'it need not measure more than an 'identifiable trifle.' This is because 'the injury in fact requirement under Article III is qualitative, not quantitative, in nature.'") (citation omitted)); *see also Trans-Union LLC v. Ramirez*, ---U.S.----, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021).

**C. Mootness**

Since it is undisputed that the City rescinded the April 4th Resolution, the Court must determine whether the Plaintiffs' requests for relief are now moot. "The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)). This case-or-controversy requirement persists "through all stages of federal judicial proceedings." *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013). Thus,

"[i]f an intervening event renders the court unable to grant the litigant 'any effectual relief whatever,' the case is moot." *Dierlam*, 977 F.3d at 476 (quoting *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 135 L. Ed. 2d 453 (1996)). But, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012) (internal quotations and citation omitted).

"When conducting a mootness analysis, a court must not 'confuse[ ] mootness with the merits.'" *Dierlam*, 977 F.3d at 477 (quoting *Chafin*, 568 U.S. at 174). A court "need only ask whether the plaintiff's requested relief is 'so implausible that it may be disregarded on the question of jurisdiction[,]'" leaving for later "to decide whether [the plaintiff] is in fact entitled to the relief he seeks." *Id.* (quoting *Chafin*, 568 U.S. at 177) (internal quotations omitted). Because mootness turns on each form of relief requested, this Court considers the Plaintiffs' requests for declaratory relief, injunctive relief, and damages separately. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("A suit may become moot only as to a particular form of relief."); *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) ("it is possible for a 'live' controversy to remain where some but not all issues in a case have become moot.") (citation omitted).

### i. Declaratory and injunctive relief

In their Amended Complaint, the Plaintiffs request four different forms of declaratory relief: (1) that the City's April 4th Resolution violated the Plaintiffs' right to due process; (2) that Mississippi Code Section 11-51-75 is unconstitutional on its face and as applied in that it fails to provide adequate notice to affected property owners in violation of the Due Process Clause of the Fourteenth Amendment; (3) that Mississippi Code Section 43-35-13 is unconstitutional on its face

16

and as applied to the extent that it deprives persons of their property interests without a meaningful opportunity to be heard; and (4) that any urban renewal resolution passed without proper notice would be similarly unconstitutional. The Plaintiffs also request a permanent injunction preventing the City "from creating any future urban renewal area without providing affected property owners notice reasonably designed to allow them a meaningful opportunity to defend their rights." [17], p. 45. The Court will first consider the Plaintiffs' request for declaratory relief arising out of the April 4th Resolution, and will then determine whether the "voluntary cessation doctrine" saves the Plaintiffs' three remaining requests for declaratory and injunctive relief from a finding of mootness.

### a. April 4th Resolution

The Plaintiffs seek a declaratory judgment that "by passing the April 4, 2023 resolution without providing owners notice and a meaningful opportunity to challenge the inclusion of their property in an urban renewal area, the City deprived Plaintiffs . . . of their property interests, under color of state law, without due process of law." [17], p. 45. Yet a "federal court may not issue a declaratory judgment unless there exists 'an actual controversy.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citation omitted). As discussed above, it is undisputed that the City rescinded the April 4th Resolution. Thus, even if the Court were to issue a declaratory judgment that the City's April 4th Resolution violated the Plaintiffs' right to due process, it would have no practical effect or provide any meaningful relief. *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 397 (5th Cir. 2000) (finding the request for declaratory relief moot because "[g]ranting this relief would not affect the rights of the parties); *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 469 (5th Cir. 2020) (holding a claim is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party").

Indeed, such relief would serve merely as "a retrospective opinion that [the Plaintiffs] [were] wrongly harmed by the [City]." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (citation omitted). And "[a] claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot." *Prison Legal News*, 944 F.3d at 880 (citations omitted). Because the Plaintiffs no longer suffer a redressable "actual injury" as required by Article III, the Plaintiffs' request that this Court enter a declaratory judgment as to the April 4th Resolution is moot.[4] *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990); *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Engineers*, 217 F.3d 393, 397 (5th Cir. 2000).

### b. Voluntary Cessation Doctrine

Although the City rescinded the April 4th Resolution, the Plaintiffs argue that the City "did not (and cannot) repeal the governing Mississippi statutes that Plaintiffs challenge—those remain in effect." [21], p. 18. Accordingly, the Plaintiffs assert that their remaining three claims for declaratory and injunctive relief are justiciable under the voluntary cessation doctrine, which is an exception to mootness. The Court agrees.

Under the voluntary cessation doctrine, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013); *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). "Otherwise, a defendant

---

[4] It is unclear from the Amended Complaint whether the Plaintiffs also seek a permanent injunction arising out of the April 4th Resolution. *See* [17], p. 45. But to the extent such relief is requested, it is moot for the same reasons their request for declaratory relief is moot.

could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91.

"In general, a defendant's voluntary conduct moots a case only if 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (citation omitted); *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). Although the Supreme Court has held that the standard for determining whether a defendant's voluntary cessation is "stringent," this "heavy burden" applies to private defendants rather than government entities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

Government entities bear a "'a lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Freedom From Religion Found., Inc.*, 58 F.4th at 833. This is because the Court presumes that "state actors, as public representatives, act in good faith." *Id.* (citations omitted). But this presumption of good-faith cessation is defeated when: (1) there is no controlling statement of future intention; (2) the timing of the change is suspiciously timed; and (3) the government continues to defend the challenged behavior. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1089-90 (5th Cir. 2023); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019)). The Plaintiffs argue that the City fails to carry its lighter burden proving that their claims for declaratory relief are moot.

To begin, the Plaintiffs assert that the City declined to issue a controlling statement of future intention that it will not reenact the April 4th Resolution, or similar blight resolution. At the hearing on this matter, the City conceded that they have not issued a controlling statement of future intention. [43], p. 17. Despite this concession, the City cites its statements within its briefs that it has withdrawn the April 4th Resolution, has not enacted a subsequent plan that would enforce the April 4th Resolution, offered voluntary opt outs so the Plaintiffs could remove their properties from the urban renewal area, and that the City included none of the Plaintiffs' properties "in its ongoing urban renewal area or related proposed urban renewal plan." [25], p. 7. According to the City, "actions speak louder than words" and through these actions, "the City has made it absolutely clear that it will not proceed with any urban renewal area or plan encompassing Plaintiffs' properties." [43], p. 17; [25], p. 7. In fact, the City emphasizes that it has only exercised its power of eminent domain one time in 27 years, and that was done only at the request of the property owner. [43], p. 7.

But statements within "brief[s] are not a controlling statement of future intention." *Fenves*, 979 F.3d at 328. Instead, controlling statements include affidavits and other sworn testimony. *Sossamon*, 560 F.3d at 325; *Fenves*, 979 F.3d at 328. Thus, with no affidavit or sworn testimony presented, the City's reliance on its statements within its briefs alone cannot be considered controlling statements of future intention. *Nelson v. Landry*, ---F. Supp. 3d ----, 2024 WL 409385, at *6 (M.D. La. 2024) ("absent a formal announcement, a government defendant's voluntary cessation of possibly wrongful conduct is not presumed to be done in good faith."); *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (government officials'

representations through counsel that their behavior will change following a recent Supreme Court decision did not moot the case because no official policy retraction had occurred).

Even if they were considered controlling statements of future intention, however, the statements upon which the City relies fail to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189. Indeed, the statements within its briefing do not affirmatively state the City's commitment to not reenacting a similar blight resolution affecting the Plaintiffs' properties. *Schlissel*, 939 F.3d at 768 ("The University has not affirmatively stated that it does not intend to reenact the challenged definitions."); *Friends of the Earth, Inc.*, 528 U.S. at 189. Rather, the statements merely provide that the April 4th Resolution has been rescinded—not that it or a similar resolution affecting the Plaintiffs' properties will not be passed in the future. Additionally, the Plaintiffs have alleged that at the same meeting where the City provided the Plaintiffs with the opt-out forms, that the City's Mayor stated, "We're not going to stop the plan." [17], pg. 17. And at the hearing on this matter, the Plaintiffs submitted that another "redevelopment authority has been formed," so the Plaintiffs argue that there is "quite a bit of evidence that there is an interest in redeveloping right around here." [43], p. 45. Thus, based on the record before the Court, such statements by the City do not provide the Court with the "clarity" needed "to dismiss on mootness grounds." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1090 (5th Cir. 2023); *Fenves*, 979 F.3d at 328 (finding that the defendant's voluntary cessation did not moot the case, despite the defendant's statement that it "has no plans to, and will not, reenact the former policies.").

To be sure, the Court also considers the timing of the City's withdrawal of the April 4th Resolution. While the City's April 4th urban renewal plan and opt-out procedures were pending,

21

the Plaintiffs filed suit in this Court on October 12, 2023. And less than six weeks after filing this action, the City rescinded the April 4th Resolution. [19], p. 5. The City asserts that this decision "was not a sham, nor was it in response to Plaintiffs' filing this lawsuit. The City made legitimate effort to hear from its citizens, take feedback, and afford citizens the opportunity to address their concerns and opt out of the urban renewal area all together." [25], p. 7.

Despite the City's explanation, however, the voluntary cessation doctrine "requires more than platitudes to render a case moot." *Exxon Mobil Corporation v. Arjuna Cap., LLC*, --- F. Supp. 3d ----, 2024 WL 2331803, at *5 (N.D. Tex. May 22, 2024) (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)); *Knox v. SEIU*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287, 183 L.Ed.2d 281 (2012) ("[M]aneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye."). Even though the Plaintiffs requested to opt out of the urban renewal plan prior to initiating this litigation, the timing of the City's withdrawal of the April 4th Resolution nevertheless "raises suspicions" that its cessation may not be genuine, but rather made in response to this litigation. *Schilssel*, 939 F.3d at 769 (finding that defendant's voluntary cessation did not moot a case even where a review process was initiated before litigation); *see Cain v. City of New Orleans*, 281 F. Supp. 3d 624, 639 (E.D. La. 2017). "[I]nnocuous reasons could just as well explain the timing of the [rescission]." *Netflix, Inc., v. Babin*, 88 F.4th 1080, 1092 (5th Cir. 2023). But again, it is the City's burden to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189; *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (explaining though a governmental defendant's burden is "lighter" it must still make "absolutely clear" that the conduct cannot be "reasonably expected to recur.").

22

Finally, "[a]lthough not dispositive, the Supreme Court has found whether the government 'vigorously defends the constitutionality of its . . . program' important to the mootness inquiry." *Schlissel*, 939 F.3d at 770 (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)). Here, the City's entire defense on the merits is that the Plaintiffs were not entitled to notice pursuant to Mississippi law and that the City therefore did not violate the Plaintiffs' right to procedural due process. The Sixth Circuit has found that similar arguments "constitute a defense of its practices." *Schlissel*, 939 F.3d at 770; *Fenves*, 979 F.3d at 328; *Louisiana v. U.S. Env't Prot. Agency*, --- F. Supp. 3d ----, 2024 WL 250798, at *16 (W.D. La. 2024) (applying the voluntary cessation doctrine and finding that the "EPA continues to vehemently defend its position regarding the challenged mandates."). So this factor also weighs against a finding of mootness.

For these reasons, the City has not put forth sufficient evidence to satisfy its burden to show that its voluntary cessation makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Therefore, the Plaintiffs' remaining claims for declaratory and injunctive relief are not moot.

**ii. Nominal damages**

In their Amended Complaint, the Plaintiffs also seek nominal damages of $1.00 for the alleged deprivation of their right to due process. The Supreme Court has held that where due-process rights have allegedly been violated, "even if [plaintiffs] did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process." *Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). "Because the right to procedural due process is 'absolute' . . . the denial of procedural due process should be actionable for nominal

damages without proof of actual injury." *Carey*, 435 U.S. at 266. Because "an award of nominal damages can redress a past injury," the Plaintiffs' procedural due process claim for damages is not moot. *Uzuegbunam v. Preczewski*, --- U.S. ----, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021); *Carey*, 435 U.S. at 248 (awarding nominal damages for a violation of procedural due process); *Ward v. Santa Fe Indep. Sch. Dist.*, 35 F. App'x 386 (5th Cir. 2002) (collecting cases).

**D. Ripeness**

"As compared to standing, ripeness . . . asks whether the injury is too contingent or remote to support present adjudication. As compared to mootness, which asks whether there is anything left for the court to do, ripeness asks whether there yet is any need for the court to act." Charles Alen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.1 (3rd ed. 2024). Courts are directed "[to] dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."[5] *Monk v. Huston*, 430 F.3d 279, 282 (5th Cir. 2003) (quoting *New Orleans Public Service, Inc.*, 833 F.2d at 586). Meaning, to survive dismissal, a case or controversy "must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). In making a ripeness determination, courts consider "(1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration." *Bowlby*, 681 F.3d at 224 (quoting *Rosedale Missionary Baptist Church*, 641 F.3d at 91).

---

[5] The Plaintiffs assert "traditional due process claims" such that the "injury and issue . . . is the opportunity for a hearing, not the extent of restrictions on property use." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 223 (5th Cir. 2012). Because the Plaintiffs' procedural due process claims do not "involve allegations of deprivations 'ancillary' to or 'arising from' a takings claim" the Court analyzes the Plaintiffs claims according to "general ripeness principles." *Id.* (citation omitted).

### i. Fitness of the issue for judicial decision

"Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). Here, the Plaintiffs assert procedural due process claims arising out of the lack of individualized notice of the City's intent to designate their properties as slum or blighted. The Plaintiffs argue this lack of individualized notice violates the Due Process Clause because under Mississippi law, they are required to challenge the slum or blighted designations within 10 days. MISS. CODE ANN. § 11-51-75. But because they received no individual notice, the Plaintiffs missed the 10-day window to appeal, leaving them with the inability to challenge the slum or blighted designations in the future. Meaning, at some point, the City could initiate eminent domain proceedings, prove that urban renewal is a permissible public use, and take their properties—all without giving the Plaintiffs the opportunity to challenge the slum or blighted designations at the eminent domain proceeding.

The City urges this Court to find that the Plaintiffs' procedural due process claims are not ripe for adjudication because they sit "atop a mountain of conjecture and speculation." *United Transp. Union*, 205 F.3d at 858. Following the Plaintiffs' challenges to their logical conclusion, a number of events must necessarily occur. First, the City would have to ignore the Plaintiffs' opt-out forms. Second, the City would need to redesignate their properties as slum or blighted. Third, the City would have to pass a new Urban Renewal Plan, and then wait 10 days to allow for appeal under Mississippi Code Section 11-51-75. Fourth, the City would need to initiate an eminent domain proceeding. Fifth, at the eminent domain proceeding, it would then be the City's burden to prove public use and the Plaintiffs' burden to prove "lack of public necessity." *Starkville*

*Lodging, LLC v. Mississippi Transportation Comm'n*, 296 So. 3d 83, 89 (Miss. Ct. App. 2019). Sixth, assuming the City meets their burden and pays just compensation, the Plaintiffs' properties would then be acquired by the City. But under Article 3, § 17A of the Mississippi Constitution, the City must wait ten years after acquisition before selling the properties to a private developer unless four exceptions are made—none of which seem to be applicable to the Plaintiffs' properties. Seventh, assuming none of the exceptions apply, after waiting ten years, the City could then sell the properties to a private developer.[6] Only after all of these events occurred would the Plaintiffs' concerns come to fruition. Although the City urges the Court to take the position that the Plaintiffs claims are speculative and therefore not ripe for review, the Court is not inclined to do so.

As succinctly stated by the Plaintiffs, they "challenge not just the slum and blight resolution, but also the *process* of making and challenging these resolutions." [21], p. 18. Therefore, while the Plaintiffs are indeed concerned with the consequences following the lack of individualized noticed they received—it is the lack of individual notice of the slum or blight designations that the Plaintiffs challenge in this case. Although it is unlikely all of the above seven things will happen, it does not follow that the Plaintiffs' claims are purely speculative in light of the City's prior plans. It would be different had the City not previously adopted an urban renewal area that included the Plaintiffs' properties. And because the Plaintiffs challenge the City's lack of individualized notice, their procedural due process claims became ripe for review 10 days after the City passed the April 4th Resolution. [43], p. 33. Indeed, as the Supreme Court has stated, "[i]n

---

[6] Although it is unclear how it would work, practically speaking, a private developer may, in some circumstances, have to present a plan that would allow the City to prevail on public use at the eminent domain proceeding and then wait ten years before the property could actually be transferred to the private developer to begin work on the project.

procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125. (emphasis original); *see also Carey*, 435 U.S. at 259 ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."). Thus, a procedural due process injury is complete *at the time that process is denied*. *Bowlby*, 681 F.3d at 222 (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975; 108 L. Ed. 2d 100 (1990) (emphasis added)).

On its face, the unlikely nature of any future development by a private developer of the Plaintiffs' properties appear to make the instant ripeness determination a close one. But upon review, the Plaintiffs' procedural due process claims are ripe "[b]ecause the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." *Bowlby*, 681 F.3d at 224 (citing *Carey*, 435 U.S. at 266). Applying general ripeness principles to the Plaintiffs' claims, the Court finds that the Plaintiffs' injuries arising from the alleged denial of procedural due process are not abstract or hypothetical and this matter is fit for judicial decision. *See Brown v. Nero*, No. 1:15-cv-965-RP, 2016 WL 3017417, at *3 (W.D. Tex. May 24, 2016).

### ii. Hardship of the parties

Turning now to the second ripeness requirement, the Court also finds that the Plaintiffs "have credibly alleged that withholding consideration of the 'procedural due process' claim could cause them further hardship" as the Plaintiffs have alleged that their rights to procedural due process were violated, and as a result, their properties have been designated as slum or blighted

with no ability to challenge these designations in the future. *Sheffield v. Bush*, 604 F. Supp. 3d 586, 601 (S.D. Tex. 2022); *Bowlby*, 681 F.3d at 226. Based on the record currently before the Court, the Plaintiffs' procedural due process claims are ripe for review. Indeed, the remaining questions "are purely legal ones." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)). All the Court must really decide as this point is whether the City's failure to provide individualized notice of its intent to designate the Plaintiffs' properties as slum or blighted violated the Due Process Clause.

## V. PROCEDURAL DUE PROCESS

Here, the Plaintiffs essentially argue that the City should review each individual parcel of land within the 320 acres that the City designated as slum or blighted and provide not only an individualized mailed notice to those affected property owners, but also an individualized hearing allowing the property owners to challenge the validity of the designation. In deciding the merits of the Plaintiffs' procedural due process claims, the Court will first address the difference between adjudicative decisions and legislative decisions as described by the Fifth Circuit and how other courts have interpreted slum or blighted designations under this, and similar, frameworks. The Court will then consider the Plaintiffs' argument that *Wiggins v. City of Clinton Mississippi* changed this framework by precluding a plaintiff's ability to challenge slum or blighted designations at a subsequent eminent domain proceeding. And finally, the Court finds that the Plaintiffs do not have a protected property interest in a statutory cause of action in Mississippi related to slum or blight determinations. For all of the reasons discussed below, the City's April 4th Resolution designating

the Plaintiffs' properties as slum or blighted was a legislative decision, to which no due process rights attach.

## A. The City's slum or blighted designations was a legislative decision

The Fifth Circuit has held that if conduct "by a city council is viewed as administrative/adjudicative, procedural due process rights may attach." *Cnty. Line Joint Venture v. Grand Prairie, Texas*, 839 F.2d 1142, 1144 (5th Cir. 1988). But "if the court views the governmental conduct as legislative, the property owner has no procedural due process rights." *County Line Joint Venture*, 839 F.2d at 1144; *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S. Ct. 141, 142, 60 L. Ed. 372 (1915). The Fifth Circuit has explained the difference between legislative decisions and adjudicative action as follows:

> Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general zoning decision which applies to a large group of interests. Conversely, a municipal body's action may be more likely termed adjudicative if an appointed group, such as a zoning board, makes a specific decision regarding a specific piece of property.

*County Line Joint Venture*, 839 F.2d at 1144. In other words, "[i]f the underlying facts on which the decision is based are . . . 'generalizations concerning a policy or state of affairs,' then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative." *Hughes v. Tarrant County Texas*, 948 F.2d 918, 921 (5th Cir. 1991) (quoting *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984)). Therefore, "[i]f the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative." *Id.*

On April 4, 2023, the City, through its Board of Aldermen, passed a "Resolution Designating Slum and Blighted Areas for Rehabilitation, Conservation, and Redevelopment." [17], p. 10. The April 4th Resolution designated six areas, which included 131 individual parcels of land, spanning over 320 acres, as slum or blighted pursuant to Mississippi's urban renewal laws. [17], pps. 10-11. The "Railroad District," where the Plaintiffs' properties are located, was included in these six areas. Thus, the April 4th Resolution was a decision made by an elected group that applied to a large number of properties. This certainly sounds like a legislative decision.

And other courts have consistently viewed slum or blight designations as legislative decisions not subject to the protections of the Due Process Clause.[7] *See MC Trilogy Tex., LLC v. City of Heath, Tex.*, 662 F. Supp. 3d 690, 697 (N.D. Tex. 2023) (holding that the plaintiff failed to plead a procedural due process claim because a zoning decision by an elected body is legislative or "quasi-legislative" negating procedural due process claims); *Lewis v. City of Jeffersonsille, Ind.*, No. 4:02-cv-00221, 2004 WL 1629741, at *2 n.2 (S.D. Ind. July 6, 2004) ("The blight declaration itself is a legislative decision which may or may not lead to a taking."); *South Gwinnett v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974) (finding that a local zoning decision is "a quasi-legislative procedure, not subject to federal judicial consideration in the absence of arbitrary [and capricious] action."). This Court is inclined to join them.

---

[7] *City of Joliet v. Mid-City Nat'l Bank of Chicago*, No. 05-cv-6746, 2014 WL 4667254, at *9 (N.D. Ill. Sep. 17, 2014) ("[A] legislative determination of blight is presumed to be for a public purpose under the governing Illinois statute . . ."); *Trager v. Peabody Redevelopment Auth.*, 367 F. Supp. 1000, 1002 (D. Mass. 1973) ("In eminent domain cases, the broad decision to condemn an area for a public purpose, e.g., urban renewal in a blighted area, is legislative and does not require an adjudicative hearing with notice and an opportunity to be heard provided to each individual affected."); *Brookwood Dev., LLC v. City of Ridgeland, Miss.*, No. 3:21-cv-219, 2022 WL 1752273, at *5 (S.D. Miss. May 31, 2022) (finding that the imposition of a temporary moratorium suspending conditional use permit applications for climate-controlled storage facilities for six months, and the adoption of the zoning ordinance amendments are legislative because these decisions impact the community at large).

In designating more than 320 acres as slum or blighted, the City appears to be concerned with the area as a whole rather than individual properties. In fact, the City has been transparent in its goal to obtain grant money for this area to aid in urban renewal. Addressing such concerns is surely similar to a zoning decision,[8] which often addresses the character of a neighborhood rather than individual properties. For example, if a city designates ten blocks as blighted, but a well-attended church is within those ten blocks—the city has not specifically singled out the church as being blighted but instead has identified the area as a whole to be blighted. As an another example, assume there is a large area of undeveloped land in a city designated as industrial. But the city eventually decides to rezone that land as residential because the area is undeveloped and the city needs more housing. In doing so, the city can now eminent domain part of that property for other public uses, such as parks. The city's subsequent utilization of the city's power of eminent domain, however, does not transform the initial zoning decision into one to which due process rights attach.

As a result, this Court finds that the City's April 4th Resolution designating the Plaintiffs' properties as slum or blighted was a legislative decision for which the Plaintiffs "received procedural due process by the legislative process itself and they have no right to individual attention." *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986). As aptly explained by another court, "[t]he question of what constitutes a slum or blighted area is a legislative question, political in nature and involving questions of public policy" and "[t]he Court will not substitute its

---

[8] While the City's April 4th Resolution is not a pure zoning decision, it is certainly "akin" to one, as admitted by the Plaintiffs. [43], p. 40. The City further argued at the hearing on this matter that the City's decision was more analogous to the changing of flood maps for which there is no requirement that notice be individually mailed to all impacted property owners. [43], p. 50.

judgment for the judgment of the legislative body" absent extraordinary circumstances. *Adair v. Nashville Housing Auth.*, 388 F. Supp. 481, 490 (M.D. Tenn. Mar. 5, 1974) (collecting cases).

"In short, the general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation, partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will." *Rogin*, 616 F. 2d at 694; *see 75 Acres, LLC v. Miami–Dade County, Florida*, 338 F.3d 1288, 1294 (11th Cir. 2003) (finding that legislative activity does not entitle an aggrieved property owner to procedural due process); *see also Smith v. Jefferson County Bd. of Sch., Com'rs*, 641 F.3d 197, 217 (6th Cir. 2011) ("the legislative process provides all the process that is constitutionally due" when an alleged injury is the result of a legislative act). This is because "[t]he act of legislating necessarily entails political trading, compromise, and ad hoc decision making which, in the aggregate, produce policies that at least approximate a fair and equitable distribution of social resources and obligations." *Rogin v. Bensalem Tp.*, 616 F.2d 680, 693 (3rd Cir. 1980).

Here, the Plaintiffs certainly engaged in the political process by pushing back against the City's urban renewal plan. As a result, not only did the City delay the vote to adopt the urban renewal plan, but the City also created a form allowing those residing within the six areas designated as slum or blighted to opt out of the proposed urban renewal plan. [21], p. 12. And ultimately, as a result of backlash from the public, the City rescinded the urban renewal plan entirely. To be sure, the opt-out form and the City's eventual action rescinding the urban renewal plan are prime examples of the political process in action and demonstrates the process the Plaintiffs received through legislative activity. Thus, the Plaintiffs' challenge to the City's actions

in designating the properties as slum or blighted for purposes of rehabilitation are legislative in nature and not subject to the individualized notice and individualized hearing requirements of the Due Process Clause. *Jackson Ct. Condos.*, 874 F.2d at 1074.

## C. *Wiggins v. City of Clinton, Mississippi*

Having found that the City's April 4th Resolution was a legislative decision, the Court will now address the Plaintiffs' primary argument. The Plaintiffs argue that after the Mississippi Supreme Court's decision in *Wiggins v. City of Clinton Mississippi*, slum or blighted designations are no longer legislative decisions under Mississippi law, but instead, are adjudicative actions to which procedural due process rights attach. Significantly, the Plaintiffs recognize that but for this three-page Mississippi Supreme Court decision, they would have no procedural due process claims. [43], pps. 26-27 (explaining that before *Wiggins*, plaintiffs could "challenge predicates for public use within the eminent domain proceeding."). Given the dilapidated state of Wiggins' property and the 1,434 separate code violations, however, it is not hard to see why Clinton prevailed—or how the single parcel of land at issue in *Wiggins* is distinguishable from the 131 parcels at issue in this case.

In *Wiggins*, the City of Clinton adopted an urban renewal area designation and an urban renewal plan that included Wiggins's property. *Wiggins v. City of Clinton Miss.*, 298 So. 3d. 962, 964 (Miss. 2020). Two months later, Clinton filed an eminent domain action against the property. *Id.* When Wiggins responded to the complaint a month later, he argued that Clinton lacked authority to take his property, failed to establish a public necessity for the taking, and could not prove that the taking was for a public use. *Id.*

His first claim—that Clinton had no authority to exercise eminent domain—hinged on the argument that Clinton's urban renewal area designation was a sham. *Id.* In response, Clinton maintained that "Wiggins should have filed his objection [to the urban renewal area designation] under Mississippi Code Section 11-51-75, within ten (10) days from the date Clinton made its decision." *Id.* (internal quotation marks omitted). The Mississippi Supreme Court agreed and found that challenges to an urban renewal area must be made within ten days—presumably because the statute says this and because urban renewal area designations are generally legislative decisions. *Id.* at 965 ("The trial court ruled the ten-day period for appealing the decision had expired. We, as the trial court did, find that Wiggins's objection was untimely."). Before finding the eminent domain was proper, however, the Mississippi Supreme Court first considered whether Wiggins proved that the city of Clinton failed to demonstrate a public necessity and then addressed whether the city of Clinton met its burden of proving public use.[9]

The Mississippi Supreme Court explained that while urban renewal is ordinarily a permissible public use, the city of Clinton nevertheless had the "burden of demonstrating that the public use it determined satisfied the laws of our state." *Id.* at 965. To meet its burden, Clinton submitted evidence of its designated public use by way of "testimony detailing what it planned to do with the property." *Id.* Through this evidence, Clinton specifically identified four separate ways the property was acquired for public use. Clinton stated that it (1) planned to sell the property to a

---

[9] The question of public necessity for a taking has consistently been held to be a legislative question that courts should not disturb absent fraud or abuse of discretion. *Morley v. Jackson Redevelopment Auth.*, 632 So. 2d 1284, 1288 (Miss. 1994). And having found no evidence "of abuse of discretion or fraud on the part of Clinton in determining necessity," the Mississippi Supreme Court found Clinton satisfied its public necessity burden. *Wiggins*, 298 So.3d at 965. Importantly, though, a property owner in Mississippi can still challenge the necessity of a city taking a particular parcel of property—even if it is under an abuse of discretion standard.

private party who would renovate it; (2) utilize it as a commercial property; (3) preserve the rapidly deteriorating historical character of the properties; and (4) contribute to the revitalization of the Olde Towne Clinton Historic district. *Id.* at n.3. The Mississippi Supreme Court found that the evidence presented by the city of Clinton was sufficient to support a judgment that the eminent domain was for public use. *Id.* at 966.[10]

Indeed, although Clinton stated that it planned to transfer the property to a private developer, such action is permissible under Mississippi law. As set forth in Article 3 § 17A of the Mississippi Constitution, property acquired by the power of eminent domain may be immediately transferred to a private developer if the eminent domain: "(a) removes a public nuisance; (b) removes a structure that is beyond repair or unfit for human habitation or use; (c) is used to acquire abandoned property; or (d) eliminates a direct threat to public health or safety caused by the property in its current condition." Wiggins' property certainly appears to meet a number of these exceptions, as he was assessed 1,434 separate code violations to which he pleaded guilty.

The parties agree that *Wiggins* holds that property owners may only challenge urban-renewal-area designations under Mississippi Code § 11-51-75. The parties also agree that after the ten-day window expires, property owners lose their ability to challenge the inclusion of their

---

[10] The landowner in *Wiggins* did not appear to raise any arguments related to Article 3 § 17A of the Mississippi Constitution. Also in *Wiggins*, the Mississippi Supreme Court relied on its 1967 decision in *Paulk v. Housing Auth. of City of Tupelo*, 195 So. 2d 488 (Miss. 1967). *Id.* The Mississippi Supreme Court's decision in *Paulk*, however, was handed down 45 years before Article 3 § 17A of the Mississippi Constitution was adopted, which prohibits the transfer of property acquired by eminent domain to private developers for a period of ten years after its acquisition. Mississippi, like many other states, adopted Article 3 § 17A in response to the Supreme Court's decision in *Kelo v. City of New London, Conn.*, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005). *See* Real Property Law—Eminent Domain Proceedings: Eminent Domain, Lexis+ (January 2023), https://plus.lexis.com/document/index?crid=05c23e69-b69d-4b6b-9b8a-20e1823b5444&pdpermalink=efc8c5a8-03d2-488e-80ce-b7d6f5dbc5d7&pdmfid=1530671&pdisurlapi=true#/document/d52b2db9-5b7e-4a42-817d-195f0aebed53 ("To date, 42 states have passed post-*Kelo* legislation that places limits or restrictions on the exercise of eminent domain by state and local authorities).

property in an urban renewal area—even as a defense to a subsequent eminent domain action. The parties even agree that after *Wiggins*, it is clear that cities retain the power of eminent domain in connection with urban renewal. The parties' only disagreement regarding *Wiggins* is whether slum or blighted designations are now adjudicative actions entitling the Plaintiffs to notice under the Due Process Clause.

According to the Plaintiffs, because "urban renewal is an acceptable public use in the abstract, the question of whether a city's specific urban renewal designation complies with the state's urban renewal laws is an adjudicative decision left to the courts." [21], p. 29; *see also* MISS. CONST. ART. 3, § 17 ("whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question.").[11] And since Mississippi courts have found urban renewal to be a permissible public use, the Plaintiffs argue that precedent dictates such findings by courts in the future. In other words, the Plaintiffs' position is that after *Wiggins*, a slum or blighted designation, by itself, allows the City to eminent domain property without proving public use. And in doing so, the Plaintiffs submit that the first

---

[11] The Mississippi Supreme Court has previously explained the reasoning behind public use being a judicial question, which this Court cites for clarity:

> The controlling issue in this case is not whether there was a necessity for Thomas' property as the City characterizes the issue, but whether Thomas' property would be put to an appropriate public use. We have held that whether the taking is necessary has consistently been held to be a legislative question which the courts should not disturb absent fraud or abuse of discretion. *Morely v. Jackson Redevelopment Authority*, 632 So. 2d 1284, 1288 (Miss. 1994), citing *Governor's Office v. Carter*, 573 So. 2d 736, 739 (Miss. 1990). However, whether there is a public use is a judicial question without regard to legislative assertions that the use is public. *Morely*, 632 So.2d at 1289, citing Mississippi Constitution (1890), article 3, § 17. Furthermore, Mississippi Code Annotated § 11–27–15 (1972) allows a defendant to file a motion asserting that a taking is not one for public use. "Once the motion has been filed and the proceeding begun, it is the condemnor which has the burden of proving public use, unlike the question of public necessity, where the lack of public necessity must be shown by the owner." *Morely* at 1289.

*Mayor v. Tomas*, 645 So. 2d 940, at 942 (Miss. 1994).

half of an eminent domain proceeding must now be argued at the time a slum or blighted designation is proposed.

But in *Wiggins*, the Mississippi Supreme Court did not allow Clinton to exercise its power of eminent domain purely because the property was designated as blighted. Instead, the Mississippi Supreme Court specifically held that Clinton had the burden of proving public use. *Wiggins*, 298 So. 3d. at 965. And upon review of the evidence offered by Clinton, the Mississippi Supreme Court found the public use requirement was satisfied. *Id.* at 966. Thus, despite the Plaintiffs' argument, the Mississippi Supreme Court did not find that the public use requirement was automatically satisfied as a result of the blighted designation alone. In other words, *Wiggins* does not sever eminent domain proceedings into two separate actions.

To be sure, after *Wiggins*, property owners may still move to dismiss an eminent domain proceeding by challenging public use and/or public necessity. Although property owners may challenge public use in various ways, in the urban renewal context, a property owner can still challenge public use on the ground that the taking is for the benefit of a private entity rather than for the benefit of the public. *See Mayor v. Thomas*, 645 So. 2d 940, 943 (Miss. 1994) ("Although the City cites a list of alleged public benefits from Harrah's gaming enterprise, it has failed to show how the public will directly benefit from the use of Thomas' land."). As for public necessity, *Wiggins* does not prohibit property owners from arguing that it was unnecessary for the city to take their specific parcel of land to satisfy the city's urban renewal goals.

In sum, *Wiggins* is not the silver bullet the Plaintiffs claim it to be. Despite the Plaintiffs' argument to the contrary, *Wiggins* does not hold that a slum or blight designation is *per se* public use. Instead, *Wiggins* applies long-standing Mississippi law which places the burden on cities to

37

prove public use by way of evidence—not merely through urban renewal designations adopted prior to eminent domain proceedings. Since a property owner still has the opportunity to challenge "public use" and "public necessity" before their property is taken, due process rights do not attach to slum or blight designations.

**D. The Plaintiffs do not have a protected property interest arising under Section 11-51-75**

The Plaintiffs primarily rely on the Tenth Circuit's opinion in *M.A.K. Investment Group, LLC v. City of Glendale*, 897 F.3d 1303 (10th Cir. 2018) for their argument that they have a protected property interest to challenge slum or blight designations under Mississippi Code § 11-51-75. But unlike Colorado and other states, Mississippi has not created a separate statutory cause of action to challenge slum or blighted designations. Instead, Mississippi only has a general statutory scheme that allows *any* decision of a city to be appealed—including those involving zoning.[12] Also, even if there were a separate statutory cause of action in Mississippi, the Plaintiffs have alleged no harm to their properties at all. [43], p. 35. For the reasons fully discussed below, the Court finds that the Plaintiffs do not have a protected property interest arising under Mississippi law.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Constitution, however, does not

---

[12] In fact, if the Court adopted the Plaintiffs' argument, then Mississippi Code Section 11-51-75 would be unconstitutional as to any decision a city makes with regard to any property within the city—including zoning decisions.

create property interests but rather protects them. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). "A protected property interest is a legitimate claim of entitlement—not defined by the Constitution—but 'by existing rules or understandings that stem from an independent source such as state law.'" *Residences at Riverbend Condo. Association v. City of Chicago*, 5 F. Supp. 3d 982, 986 (N.D. Ill. 2013) (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

The Plaintiffs allege that they have a protected property interest "in the statutory cause of action arising under [Mississippi Code Section] 11-51-75 to adjudicate whether their propert[ies] [are] slum or blight[ed]." [21], p. 30. The Plaintiffs urge this Court to adopt the reasoning by the Tenth Circuit in *M.A.K. Investment Group, LLC v. City of Glendale*, 897 F.3d 1303 (10th Cir. 2018) and the Second Circuit in *Brody v. Village of Port Chester*, 434 F.3d 121 (2nd Cir. 2005). But the Court finds these cases are distinguishable for a number of reasons. To begin, the urban renewal area at issue here includes 131 parcels of land, spanning over 320 acres, compared to the fewer number of parcels and one landowner at issue in *M.A.K.*,[13] and the single parcel at issue in *Brody*. Additionally, under Mississippi law, the Plaintiffs can still challenge public use and public necessity at the eminent domain proceeding. Similarly, the instant case is in a unique procedural posture as it was brought after the City's designation but before any eminent domain proceeding, unlike *Brody* which addressed procedural due process rights at the eminent domain proceeding. Finally, because there is no urban renewal plan currently in effect, the Plaintiffs may have an opportunity in the future to challenge the City's urban renewal plans again.

---

[13] *M.A.K. Inv. Group, LLC v. City of Glendale*, No. 15-cv-2353-RBJ, 2016 WL 7324158, at *4 (D. Colo. Nov. 21, 2016).

In *M.A.K.*, the Tenth Circuit found that the City of Glendale violated the Due Process Clause when it designated M.A.K.'s properties as blighted without providing M.A.K. notice of the designations as required under Colorado's urban renewal statute. As explained by the Tenth Circuit, Colorado's urban renewal statute requires cities to notify property owners of blight studies and blight hearings concerning their properties, but not the finding of blight itself. *M.A.K. Inv. Group, LLC v. City of Glendale*, 897 F.3d 1303, 1311 (10th Cir. 2018).

Under Colorado's urban renewal statute, to "label a property blighted, municipalities must meet certain statutory requirements." *M.A.K.*, 897 F.3d at 1306 (citing COLO. REV. STAT. § 31-25-105.5(5)(a)). Specifically, "[m]unicipalities must find that the property meets 'at least five' of the eleven statutory blight factors." *Id.* at 1307. Such findings "must be made at a public hearing." *Id.* at 1307. The statute also provides that "[a]ny owner of property located within the urban renewal area may challenge the determination of blight made by the governing body . . . by filing, not later than thirty days after the date the determination of blight is made, a civil action in district court for the county in which the property is located." *Id.* at 1307 (citation and internal quotations omitted). The civil action is "for judicial review of the exercise of discretion on the part of the governing body in making the determination of blight [and] the governing body shall have the burden of proving that, in making its determination of blight, it has neither exceeded its jurisdiction nor abused its discretion." *Id.* (citation and internal quotations omitted). As a result of this state-created lawsuit, the Tenth Circuit found that "M.A.K.'s ability to preserve its property right in the statutory right of review depended on its knowledge of the simple fact the blight finding existed." *Id.* at 1312. Thus, the Tenth Circuit held that "due process required Glendale to provide M.A.K. with direct notice of the adverse blight determination." *Id.* at 1312.

40

Significantly, the Tenth Circuit declined to address whether "the blight determination is a legislative decision" to which no due process rights attach. *Id.* at 1309 n.5. Instead, the Tenth Circuit's "decision rests solely on M.A.K.'s property right in its statutory cause of action for abuse-of-discretion review." *Id.* In the Tenth Circuit's view, "whether or not the blight determination is legislative does not control our analysis. Even if due process rights do not attach to the blight determination itself, they attach to the state-created cause of action." *Id.*

Here, the Plaintiffs argue that like in *M.A.K.*, they also have a statutory right to review slum or blighted designations. But unlike Colorado's urban renewal statute which gives property owners a right to a statutory lawsuit of any blight determination, for which it is the city's burden to prove there was no abuse of discretion, Mississippi has not created such a separate statutory lawsuit. Instead, to challenge slum or blight designations in Mississippi, property owners must do so under the general statute in Mississippi that governs *all* appeals from *any* city decisions. Mississippi Code Section 11-51-75 provides that "[a]ny person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality . . . may appeal the judgment or decision . . . within ten (10) days from the date . . . the municipality rendered the judgment or decision." MISS. CODE ANN. § 11-51-75. Compared to Colorado's urban renewal statute, Mississippi Code Section 11-51-75 does not limit the city's discretion to "finite criteria that, if met, would entitle an aggrieved plaintiff to relief." *Castanon v. Cathey*, No. 18-cv-537-R, 2019 WL 13133361, at *5 (W.D. Okla. Sep. 6, 2019). Indeed, notably missing from Mississippi Code Section 11-51-75 is its inclusion in Mississippi's urban renewal laws, a list of factors to be considered, and

the standard of review.[14] And as a result, Mississippi Code Section 11-51-75 does not provide the

same "sort of individual entitlement grounded in state law" as Colorado's urban renewal statute.[15]

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982).

Finally, the plaintiff in *M.A.K.* also claimed that the "blight determination depreciates its

property values and limits its ability to sell its properties or obtain a mortgage." *M.A.K.*, 897 F.3d

at 1311. And the Tenth Circuit took that partially into consideration in finding that "M.A.K. cannot

---

[14] In fact, Mississippi's statute is more similar to that in *Crown Point I, LLC v. Intermountain Rural Electric Ass'n*, 319 F.3d 1211 (10th Cir. 2003), where the Tenth Circuit found that "Crown Point did not have a protected property interest in the hearing because there were 'no criteria . . . that would limit [the town's] discretion." *M.A.K.*, 897 F.3d at 1310. Accordingly, "Crown Point simply could not claim an entitlement to any particular outcome—even if it had the hearing, the town could do as it pleased for any reason or no reason." *M.A.K.*, 897 F.3d at 1310. In *M.A.K.*, the Tenth Circuit distinguished *Crown Point* explaining that unlike in that case, "Colorado's statute limits a city council's discretion by providing eleven exclusive factors for its decision. It then provides property owners a right to judicial review for abuse of discretion. The reviewing court cannot deny relief 'for no reason at all.'" *M.A.K.*, 897 F.3d at 1311.

[15] For similar reasons, the Court also finds *Brody v. Village of Port Chester* to be distinguishable. In *Brody*, the issue before the Second Circuit was whether due process rights attach to "a judicial proceeding established to allow aggrieved persons to assert a constitutionally prescribed limitation on a legislative action, i.e., the review procedure for challenging a public use determination made pursuant to the [eminent domain procedure laws]." *Brody v. Village of Port Chester*, 434 F.3d 121, 128 (2nd Cir. 2005). In answering that question, the Second Circuit held that where "a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane*." *Id.* at 129 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (holding that notice via newspaper was "insufficient with respect to known present beneficiaries of a known place of residence and did not satisfy the requirements of due process of law" and finding instead that due process required personal notice). The Court takes no issue with the reasoning in *Brody*, but it is nevertheless unpersuasive when applied to the facts of this case. To begin, public use is not at issue here, as no eminent domain action is pending. Additionally, the Court has already disposed of the Plaintiffs' argument that, after *Wiggins*, property owners must now litigate the first half of the eminent domain proceeding at the slum or blighted designation stage. For all of the reasons previously discussed, and because the procedural posture in *Brody* is significantly different than that here, the Court finds *Brody* is distinguishable and does not persuade this Court to find the City violated the Plaintiffs' right to procedural due process.

The Plaintiffs also rely on *Harrison Redevelopment Agency v. DeRose*, 398 N.J. Super. 361 (N.J. Super. Ct. App. Div. 2008). The question before the court in *DeRose* was whether "a property owner who fails to challenge a redevelopment designation containing his or her property within forty-five days of its adoption . . . may still challenge . . . the public purpose of the taking of his or her property, by way of a defense in an ensuing condemnation action." *Harrison Redevelopment Agency v. DeRose*, 398 N.J. Super. 361, 367 (N.J. Super. Ct. App. Div. 2008). The Court finds that *DeRose* is distinguishable for the same reasons as *Brody*.

be deprived of this state-given cause of action without due process, even if overturning the blight determination would only minimally affect its property values." *Id.* But here, the Plaintiffs have specifically disclaimed any harm to their properties. In fact, at the hearing on this matter the Plaintiffs conceded that depreciation in property values was "not at issue in this case." [43], p. 35. So, unlike in *M.A.K.*, not only has Mississippi not created a separate lawsuit to challenge slum or blight designations, but there are also no allegations of even minimal impact to property values.

The Plaintiffs recognize that the only way they have a claim is if Mississippi has created a specific cause of action to challenge a slum or blight designation. But Mississippi has not created such a lawsuit and the Plaintiffs have disclaimed any depreciation to their property values. As a result, the Court finds that the Plaintiffs do not have a protected property interest under Mississippi Code § 11-51-75. This case is dismissed.

## VI. THE CITY'S MOTION FOR SANCTIONS

The City also asks this Court to sanction the Plaintiffs "for improperly filing and maintaining a baseless lawsuit for purposes of harassment and needlessly causing the City of Ocean Springs to incur substantial attorney's fees and litigation costs." [35], p. 1. The City requests fees, expenses, and attorney's fees in according with Rule 11(c)(2) of the Federal Rules of Civil Procedure.

Rule 11 authorizes a court to impose sanctions on a party who files a pleading if the claims or defenses of the signer are not supported by existing law or by a good faith argument for an extension or change in existing law, FED. R. CIV. P. 11 (b)(2); or the allegations and other factual statements lack evidentiary support or are unlikely to do so after a reasonable opportunity for investigation. FED. R. CIV. P. 11 (b)(3). The purpose of the rule is to "deter baseless filings in

district court," *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 404, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), and to ensure that "victims of frivolous lawsuits do not pay expensive legal fees associated with defending such lawsuits." *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. FED. R. CIV. P. 11 (c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *see Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003). Courts have a duty to impose the least severe sanction that is sufficient to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993); FED. R. CIV. P. 11 (c)(4).

The Fifth Circuit has noted that "[a]n attorney may escape sanctions under [R]ule 11 if he had to rely on a client for information about the facts underlying the pleadings." *St. Amant v. Bernard*, 859 F.2d 379, 383 n.15 (5th Cir. 1988). In *St. Amant*, the court summarized the three duties that Rule 11 places on attorneys:

> (1) counsel must make reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not file a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the cost of litigation.

*Id.* at 382 (citing *Thomas*, 836 F.2d at 874).

The Court is within its discretion to deny the City's request for sanctions. *See Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 404, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) (stating that a district court has broad discretion in determining whether any sanction is warranted and, if so, what it should be); *Lulirama, Ltd. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997) (affirming district court's refusal to impose sanctions); *Matta v. May*, 118 F.3d 410, 416 (5th Cir.

44

1997) (reversing district court's order imposing sanctions because plaintiff's libel claims were well grounded in fact and law).

Rule 11 requires the movant to "describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11 (c)(2). "Under Rule 11(b)(2), [s]anctions are appropriate if counsel submits a legally indefensible filing, and [a] filing is legally indefensible if it is not warranted by existing law or by a nonfrivolous argument." *M2 Techn., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 589 (5th Cir. 2018) (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)) (internal quotations omitted). Here, the City asserts that the "Plaintiffs filed and continue to pursue this lawsuit based on a proposed urban renewal plan that was never passed . . . and . . . will never be passed." [35], p. 3.

But the City fails to meet their burden under Rule 11 of showing that these claims were frivolous. While the Court ultimately dismissed the Plaintiffs' claims, the City has not shown that the filings were "legally indefensible." *M2 Techn.*, 748 F. App'x at 589 (citing *Snow Ingredients, Inc.*, 833 F.3d at 528) (internal quotations omitted). In fact, while the Plaintiffs did not ultimately prevail, these legal arguments were challenging, and some were quite strong. Courts have denied sanctions in cases where litigants had much weaker arguments. *Greenblatt v. Richard Potasky Jeweler, Inc.*, 19 F. App'x 307, 310 (6th Cir. 2001) (denying costs where the plaintiff's appeal "though weak, is not frivolous"); *We Shall Overcome Fdn. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 968 (S.D. N.Y. 2018) (holding that while defense proffered was weak, it was not frivolous). Accordingly, the City's Motion for Sanctions [34] is denied.

## VII. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the City of Ocean Springs, Mississippi's Motion to Dismiss [18] is GRANTED. The Plaintiffs' claims against the City are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that the City of Ocean Springs, Mississippi's Motion to Strike [27] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion for Leave to File Third Notice of Supplemental Authority [31] and the Plaintiffs' Motion for Leave to File [36] are GRANTED and accepted as filed.

IT IS FURTHER ORDERED AND ADJUDGED that the City's Motion for Sanctions [34] is DENIED.

SO ORDERED, this the 31st day of January, 2025.


_____
**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**